# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION (CLEVELAND)

| | |
|---|---|
| **SUMMIT LOCATIONS, LLC**<br>311 East Street<br>Gordon, Ohio 45304<br><br>And<br><br>**HUNTINGTON OUTDOOR, LLC**<br>311 East Street<br>Gordon, Ohio 45304<br><br>        Plaintiffs,<br><br>vs.<br><br>**BOARD OF TRUSTEES, SHEFFIELD TOWNSHIP, OHIO**<br>5166 Clinton Avenue<br>Lorain, OH 44055<br><br>And<br><br>**DENISE D'AGNESE,**<br>5166 Clinton Avenue<br>Lorain, OH 44055<br><br>**DALE SUPPA**<br>5166 Clinton Avenue<br>Lorain, OH 44055<br><br>        Defendants.<br><br>**Serve Notice Only:**<br><br>David Yost<br>Ohio Attorney General<br>30 East Broad Street<br>Columbus, Ohio  43215 | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION, DAMAGES, AND ATTORNEY FEES** |

Now come the Plaintiffs, Summit Locations, LLC and Huntington Outdoor, LLC (collectively "Summit"), by and through counsel, and hereby states as follows for their Complaint:

## INTRODUCTION

1. Sheffield Township, Ohio's ("Township") Zoning Resolution ("Resolution") as it pertains to signage is illegal because it conflicts with the Ohio Revised Code. Such illegality is a violation of Summit's free speech rights under the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution and its Due Process rights under the Fourteenth Amendment to the United States Constitution.

2. Ohio Revised Code Section 519.20 prohibits townships in Ohio from banning outdoor advertising.

3. Billboards and off-premises signs are outdoor advertising.

4. Through Article 14, Section 1404(B) of the Resolution, no sign in the Township's Business Districts can display content unrelated to the premises on which it is located.

5. Such a ban expressly conflicts with Ohio Revised Code Section 519.20.

6. The Resolution is required by the Revised Code to permit outdoor advertising. However, the Township not only impermissibly prohibits what it must permit – it imposes criminal penalties to enforce its illegal ban.

7. The Township knows its Resolution is illegal but has attempted to evade doing what it cannot do directly by indirectly attempting to regulate off-premises signs under other provisions of the Resolution.

8. Ohio law does not permit the Township to prohibit off-premises signs and then attempt to regulate them under different provisions of the Resolution.

9. The Township knows this from recent litigation in this Court yet continues to persist in enforcing its illegal Resolution.

10. Summit seeks, *inter alia*, declaratory relief, injunctive relief, and money damages based on the Township's deprivation, under color of state law, of rights guaranteed to Summit by the Ohio Constitution, the United States Constitution, and 42 U.S.C. § 1983. Summit further seeks recovery of its attorney fees and costs pursuant to 42 U.S.C. § 1988.

**PARTIES, JURISDICTION, AND VENUE**

11. Summit Locations, LLC is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Darke County, Ohio at 311 East Street, Gordon, Ohio 45304.

12. Huntington Outdoor, LLC is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Darke County, Ohio at 311 East Street, Gordon, Ohio 45304.

13. Summit Locations leases and owns properties in Ohio, and other states, upon which it constructs and maintains billboards or outdoor advertising devices. Huntington Outdoor works in conjunction with Summit Locations to display content on the outdoor advertising devices.

14. Sheffield Township, Ohio, is a township existing in Lorain County, Ohio which is classified as a township under Ohio Revised Code Title 5 and which operates by and

through its Board of Trustees. The municipal governmental offices of the Township are located at 5166 Clinton Avenue, Lorain, OH 44055.

15. Defendant Board of Trustees, Sheffield Township, Ohio has enacted and promulgated the Resolution and is responsible for its enforcement. At all times, herein the Township has acted under color of state law.

16. Defendant, Denise D'Agnese, is an individual resident of the State of Ohio and is the Township's Zoning Inspector ("Zoning Inspector") and acted in concert with the Township and/or Township officials with respect to the allegations herein.

17. Defendant, Dale Suppa, is an individual resident of the State of Ohio and is the Township's Zoning Officer (hereinafter Denise D'Agnese and Dale Suppa will be collectively referred to as "Zoning Inspector") and acted in concert with the Township and/or Township officials with respect to the allegations herein.

18. As more fully explained below, a zoning permit is required in advance from the Zoning Inspector for a sign to be constructed or maintained in the Township. Such a licensing scheme constitutes a prior restraint of speech.

19. Any and all actions taken by the Defendants as set forth herein were taken under the color of state law for purposes of 42 U.S.C. § 1983.

20. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction).

21. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 to declare the parties' rights and to grant all further relief found necessary and proper.

22. Venue is proper is this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district, a substantial part of the events or omissions giving right to the claims herein occurred in this judicial district, and a substantial part of property that is the subject of this action is situated in this judicial district.

## FACTUAL ALLEGATIONS

### OUTDOOR ADVERTISING IN GENERAL AND SUMMIT'S INTERESTS WITHIN THE TOWNSHIP

23. At all relevant times, Summit has been engaged in all aspects of the outdoor advertising business including, without limitation, the display of speech through signs, and the securing of real property and property rights and locations for outdoor advertising, both within and outside the Township and the State of Ohio.

24. Under Ohio law, outdoor advertising is a lawful business use permitted in all districts zoned for industry, business, trade, or lands used for agricultural purposes. *See*, R.C. § 303.20 (for purposes of county zoning "… outdoor advertising shall be classified as a business use and be permitted in all districts zoned for industry, business, trade, or lands used for agricultural purposes."); R.C. § 519.20 (for purposes of township zoning "… outdoor advertising shall be classified as a business use and be permitted in all districts zoned for industry, business, trade, or lands used for agricultural purposes."); *State ex rel. Central Outdoor Advertising Co. v. Leonhard*, 68 Ohio L. Abs. 542, 124 N.E.2d 187, 189 (C.P. Cuyahoga Cty. 1953) ("Let us review fundamental principles. Outdoor advertising is recognized as a legitimate business. As such, the right to use property for that purpose is incident to ownership.").

25. The Township regulates signs within the Township through Section 19.00 of its Zoning Resolution. A copy of the Resolution is attached as Exhibit 1.

26. Summit holds leasehold interests within the Township for purposes of erecting, operating, and maintaining outdoor advertising signs (aka billboards) upon the real properties commonly known as: (1) 2111 North Ridge Road, Lorain, Ohio 44055; (2) 2200 North Ridge Road, Elyria, Ohio 44035; and (3) 1679 North Ridge Road, Lorain, Ohio 44055 (collectively the "Property").

27. Summit also seeks to communicate speech through additional locations in the Township but is unable to do so because of the Township's illegal laws regarding signs.

28. Billboards are also known as "off-premises" signs and "outdoor advertising." The three terms are synonymous.

29. Outdoor advertising and billboards are regulated in Ohio through Ohio Revised Code Chapter 5516 and Ohio Administrative Code Chapter 5501:2.

30. R.C. Section 5516.01 defines an "advertising device" to include any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance that is owned and operated by a person that earns compensation for the placement of a message on it and is visible from the main traveled way of any highway on the interstate system or primary system in this state."

31. For signs requiring a permit under R.C. Chapter 5516, any required local zoning permit must additionally be obtained by the applicant. O.A.C. 5501:2-2-05.

32. Billboards feature commercial solicitations and advertisements, just as newspaper and television advertising fund those mediums. However, billboard speech

presents a diverse array of news, social, political, religious, sports, arts, and cultural subjects, along with significant public service and law enforcement messages.

33. Speakers use billboards to express diverse opinions (some popular, some not) on issues of public controversy and concern, such as the separation of church and state, sexual identity, marijuana, foreign policy, and the environment. These messages sometimes result in responsive or dueling displays of countervailing perspectives.

34. Speakers use billboards to display religious messages. Churches and mainstream denominations exhort audiences to attend services, repent, or believe. Billboards also display the contrary views of atheist and humanist groups. Even within religions, billboards have been used for robust debate – for example, in the debate over gay and lesbian individuals in churches.

35. Billboard operators, such as Summit, utilize billboards to display their own speech, both commercial and non-commercial, including public service announcements. Attached as Exhibit 2 are representative examples of noncommercial billboard speech displayed by Summit on its billboards.

36. Billboards have long been recognized as an important and effective platform for expression of ideas, news, information, and advocacy. Advances in technology and communications have enhanced timeliness and relevance for speakers and audiences. The result is a level of discourse comparable to other media such as television, newspapers, the Internet, and social media platforms – all of with which billboard operators regularly compete.

37. Based on its lengthy history as a medium for a wide variety of speech, billboard speech or outdoor advertising has been referred to by the United States Supreme Court as a "venerable medium" for expressing political, social, and commercial ideas." *Metro Media, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981).

38. A billboard operator functions as a publisher when it decides whose messages to disseminate on its own media—much like a newspaper printing syndicated columns or letters to the editor, or a television station broadcasting content provided by a network, independent studio, or other content provider.

39. A sign owner or operator exercises editorial discretion when deciding whether to post, not post, or seek revisions to someone else's message. Billboard operators are not commanded by law to post any particular message and retain the discretion to decline to do so. This editorial role is more apparent when the owner or operator declines to post particular messages or requires that they be modified before posting on the operator's platform.

40. One reason billboards attract such a variety of speakers is that the barriers to entry are low. Depending on a sign's location, the cost of displaying speech on it can vary widely. Billboard content is also relatively inexpensive to produce and publish compared to video, audio, and printed copy required by other media outlets. As a result, cost-sensitive small businesses, upstart candidates, and nonprofit efforts get exposure by communicating through billboards.

41. By owning these property interests and signs, Summit and third parties are able to engage in political speech, social speech, public service speech, other forms of non-commercial speech, or commercial speech through the use, sale, or lease of billboard space.

42. Summit routinely enters into contractual agreements with third parties in the form of real property leases or property licenses for the right to engage in the business of outdoor advertising on such property. Through such contractual agreements, Summit and third parties are able to engage in political speech, social speech, public service speech, other forms of non-commercial speech, or commercial speech through the use, sale, or lease of billboard space.

43. Under both Ohio and federal law, the messages conveyed by billboards are subject to free speech protection. *See, e.g., Metro Media, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981); *Norton Outdoor Advertising, Inc. v. City of Arlington Heights*, 69 Ohio St.2d 539, 433 N.E.2d 198 (1982); *Lamar Advantage GP Co., LLC v. City of Cincinnati*, 166 Ohio St.3d 319, 2021-Ohio-3155, 185 N.E.23d 1032 (2021).

### THE TOWNSHIP'S RESOLUTION

44. Townships in Ohio have no inherent zoning power and the only zoning authority they have is that which is conferred by the legislature. *See, e.g., Litchfield Twp. Bd. of Trustees v. Forever Blueberry Barn, LLC*, 2020-Ohio-1508, ¶ 7, 160 Ohio St.3d 70, 153 N.E.3d 63 (2020) (internal citations omitted).

45. Chapter 519 of the Ohio Revised Code provides the parameters and authority of townships to promulgate and regulate zoning.

46. Ohio R.C. § 519.20 states in part the following "[f]or the purposes of sections 519.02 to 519.25, inclusive, of the Revised Code, outdoor advertising shall be classified as a

business use and be permitted in all districts zoned for industry, business, or trade, or lands used for agricultural purposes."

47. The Township's Resolution is divided into 21 Articles.

48. One of the Zoning Inspector's duties is to approve or deny a zoning permit. (Resolution, § 3.02).

49. One of the Zoning Inspector's duties is to approve or deny a zoning permit. (See Article 19, Section 1908; Article 14, Section 1414(A)).

50. Article 2, Section 200 contains the following defined terms, in pertinent part:

**Billboard** – See definition for Signs.

**Sign** – Designated to inform or attract the attention of persons not on the premises on which the sign is located.

1. Sign, On-Premises: Any sign related to a commodity or service sold or offered upon the premises which the sign is located;

2. Sign, Off-Premises: Any sign unrelated to a commodity or service sold or offered upon the premises which the sign is located;

3. Sign, Illuminated: Any sign illuminated by electricity, gas or other artificial light including reflecting or phosphorescent light;

4. Sign, Lighting : Any light, string of lights or group of lights located or arranged [] as to cast illumination on a sign;

5. Sign, Projecting: Any sign which projects from the exterior of a building.

51. Article 14 is titled "Signs" and Section 1401, states as follows:

**Purpose**

To establish a minimum regulation for public and private signs and lights; to encourage signing and lighting and other

communications which aid orientation, identify activities, express local history and character or serve other educational purposes, and to reduce conflict between signs and lighting, and the private and public communication system.

52. Article 14, Section 1404, states as follows, in pertinent part:

**Business Districts**

**\*\*\***

**B) The erection of outdoor advertising signs shall be permitted in all commercial districts provided such signs advertise a bonafide business or service conducted on the premises and the size of the sign shall be limited as provided herein.**

**\*\*\***

53. Article 14, Section 1404(B) contains an outright ban of any sign from conveying commercial information that does not pertain to the premises on which the sign is located, which is ban based upon the content of a message. Article 14, Section 1404(B) acts as a prohibition on all signs displaying off-premise content, i.e., billboards or outdoor advertising devices.

54. The Resolution does not ban signs that contain on-premises commercial content or non-commercial content, which are traditional commercial or business signs.

55. There is no question the Resolution prohibits all forms of off-premises advertising and the Ohio Supreme Court has established that a zoning ordinance that prohibits "… all forms of offsite billboard advertising … is inescapably directed to the content of protected speech. Strictures designed to stifle the free flow of information by regulating the content of expression are inherently inimical to the First Amendment's avowed purpose of preserving an uninhibited marketplace of ideas." *Norton Outdoor*

*Advertising, Inc. v. Village of Arlington Hts.*, 69 Ohio St.2d 539, 541, 433 N.E.2d 198, 200 (1982).  Consequently, a government may not prohibit off-premises speech signs while permitting on-premises speech signs.  *Id.*

56. Moreover, the Resolution's total ban of off premise speech is prohibited by R.C. Section 519.20 and is, therefore, void.

**SUMMITS' PROPOSED BILLBOARDS AND THE TOWNSHIP'S ZONING PERMIT DENIALS.**

57. Summit holds leasehold interests in the Property for purposes of erecting, operating, and maintaining outdoor advertising structures also known as billboards.

58. On or about January 11, 2024, Summit submitted information to the Township through three applications for billboards (collectively the "Application") that proposed construction on the Property of three total outdoor advertising signs ("Summit's Proposed Billboards").

59. On or about January 26, 2024, the Zoning Inspector denied Summit's Application.  However, instead of utilizing Section 1404 of the Resolution which prohibits off-premises signs, the Zoning Inspector cited to certain size and setback restrictions.

60. Prohibiting a type of sign and then attempting to regulate it under different provisions of a zoning resolution is impermissible under Ohio law and the Zoning Inspector has knowledge of this legal framework.

61. On April 16, 2023, Summit filed a complaint against Defendants in this Court in an action styled *Summit Locations, LLC, et al. v. Board of Trustees, Sheffield Twp., Oh., et al.*, No. 1:23-cv-00779-DCN ("Litigation") challenging the denial of an application to build a billboard.

62. In the Litigation, Defendant's stated reason for the denial was the prohibition against off-premises signs. (Complaint, Doc 1). However, Defendants also asserted that the off-premises ban was just one reason for the denial and that other reasons such as size were reasons. (Answer, Doc 12, pp. 6-7). Ohio law does not allow a township to ban billboards and then attempt to avoid the illegality of the ban by regulating them under different zoning provisions. *Hasman v. Genesis Outdoor, Inc.*, 2003-Ohio-923 (11th Dist. App.).

63. This Court entered judgment in the Litigation holding that the Resolution was invalid by conflicting with the Revised Code. (Doc 29, 30).

64. As a result of the Litigation Defendants knew that they were required under Ohio law to approve the Application but, instead of complying with their legal duties, denied the Application for an illegal reason.

65. Additionally, the Litigation resulted in a settlement agreement between the parties which provided that Defendants would issue the subject sign permit in that case. After agreeing to the settlement, Defendants have subsequently refused to issue the permit. Upon information and belief, such refusal is the result of the Application in the case at bar.

**COUNT ONE
DECLARATORY AND INJUNCTIVE RELIEF AS TO THE CONFLICT
BETWEEN THE RESOLUTION AND THE REVISED CODE**

66. Summit alleges and incorporates by reference all other paragraphs in the Complaint as if fully rewritten herein.

67. Ohio R.C. § 519.20 states in part the following "[f]or the purposes of sections 519.02 to 519.25, inclusive, of the Revised Code, outdoor advertising shall be classified as a business use and be permitted in all districts zoned for industry, business, or trade, or lands used for agricultural purposes."

68. Accordingly, townships in Ohio are prohibited from banning billboards, regardless of their content, because outdoor advertising is a permitted business use that must be allowed in any commercially zoned Ohio township district.

69. The Resolution expressly bans all billboards of any kind making the signs illegal and subject to criminal penalty.

70. The Resolution expressly conflicts with Ohio R.C. § 519.20 and therefore it is void and unenforceable.

71. The Township's provisions prohibiting outdoor advertising are *ultra vires* as a township may not act in violation of the Revised Code.

72. Summit seeks a declaratory judgment determining that the Resolution conflicts with state law and is, therefore, void and unenforceable together with a preliminary and permanent injunction against the enforcement of the Resolution.

## COUNT TWO
## VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983

73. Summit alleges and incorporates by reference all other paragraphs in the Complaint as if fully rewritten herein.

74. Summit's Proposed Billboards and the speech to be communicated through them are protected by the First Amendment to the U.S. Constitution and Article I, Section 11 of the Ohio Constitution.

75. A billboard may not be erected or maintained in the Township without first obtaining a permit from the Township.

76. By requiring a permit for a billboard, the Resolution acts as a prior restraint of speech.

77. Defendants' acts, omissions, and conduct as set forth herein including, without limitation, the denial of the Applications, the refusal to allow Summit's Proposed Billboards, by enacting and enforcing an ordinance that prohibits all billboards, and by criminalizing billboards, are violations of Summit's constitutional rights.

78. Defendants' conduct is intentional—it was considered, voted on, and passed by its legislative body, and is carried out and enforced by its government representatives to this day.

79. The acts, omissions, and conduct of Defendants deprive Summit of its rights under the Ohio and United States Constitutions.

80. The acts, omissions, and conduct of Defendants were taken under color of state law.

81. Summit is entitled to money damages from the Township pursuant to 42 U.S.C. § 1983.

82. As a direct and proximate result of the acts, omissions, and conduct of Defendants as set forth herein, Summit has been damaged and injured.

## COUNT THREE
## ATTORNEY FEES AND COSTS – 42 U.S.C. § 1988

83. Summit alleges and incorporates by reference all other paragraphs in the Complaint as if fully rewritten herein.

84. The Township has violated Summit's civil rights pursuant to 42 U.S.C. Section 1983.

85. Summit has expended, and will continue to expend, significant amounts of money in order to bring this action into remedy of the Township's violations of its civil rights.

86. Summit is entitled to recover its reasonable attorney fees and costs incurred in bringing this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiffs, Summit Locations, LLC and Huntington Outdoor, LLC, demand judgment as follows:

A. For declaratory judgment and temporary, preliminary, and permanent injunctive relief that the Township's Resolution is in express conflict with the Ohio Revised Code and is, therefore void, and unenforceable;

B. For declaratory judgment and temporary, preliminary, and permanent injunctive relief directing and ordering Defendants to issue permits for Summit's Proposed Billboards;

C. For declaratory judgment and temporary, preliminary, and permanent injunctive relief that the Township's Resolution, as applied by the Township, violates the Ohio Constitution including, without limitation, Article 1, Section 11, and the United States Constitution including, but not limited to, the First and Fourteenth Amendments, and is therefore invalid and unenforceable;

D. For declaratory judgment and temporary, preliminary, and permanent injunctive relief that the acts, omissions, and conduct of the Defendants as set forth herein and the Resolution violates Plaintiffs' civil rights including, without limitation, those rights guaranteed by U.S.C. § 1983 and are therefore invalid and unenforceable;

E. For a declaratory judgment, temporary, preliminary and permanent injunctive relief that the Resolution's complete ban of all billboards violates Ohio law and is therefore invalid and unenforceable;

F. For a writ of mandamus;

G. For an award of compensatory damages in an amount to be determined at trial;

H. For pre-judgment and post-judgment interest;

I. For an award of costs, disbursements, and reasonable attorneys' fees and expert fees incurred in connection with this action;

J. For an award of punitive damages; and

K. For such other relief, both legal and equitable, to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Michael A. Galasso
Michael A. Galasso (0072470)
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202-2417
(513) 721-3330 | (513) 721-5001 fax
*mgalasso@rkpt.com*
**Attorney for Plaintiff**